IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TIMOTHY J. SHANAHAN JR. and MOLLI M. LARSEN, on behalf of themselves and all others similarly situated,, <br><br>　　　　　　Plaintiffs, <br><br>vs. <br><br>LEE LAW OFFICES, et al., <br><br>　　　　　　Defendants. | 8:18-CV-129 <br><br><br> MEMORANDUM AND ORDER |

　　　　This matter is before the Court on the parties' Joint Motion for Final Approval of Class Settlement (filing 46) and the plaintiffs' Unopposed Motion for Approval of Plaintiffs' Incentive Awards & Damages and Plaintiffs' Attorneys' Fees and Costs (filing 43). Having heard the statements of counsel at a fairness hearing, and reviewed and considered the entire record, the Court will grant the motions in their entirety.

BACKGROUND

　　　　This action was filed on March 23, 2018, and the settlement agreement at issue was executed by the parties on October 30, 2018. *See* filing 1; filing 40-1. The parties filed a joint motion, pursuant to Fed. R. Civ. P. 23(b) and (e), to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. Filing 38. In an order entered February 19, 2019, the Court granted that motion, finding, among other things, that this action could be maintained as a class action; that the prerequisites to class certification under Rule 23(a) had been satisfied; and

that certification of the settlement class was superior to other available methods for the fair and efficient resolution of this controversy, satisfying Rule 23(b)(3). Filing 41. The Court designated class representatives, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing. Filing 41. And the Court reviewed the forms of notice submitted by the parties, approved them as to form, and approved their plan for directing notice to the class members, finding that their plan provided the best notice practicable under the circumstances and was in compliance with Rule 23 and the requirements of due process. Filing 41.

Notice was mailed to identified class members on April 5, 2019, giving the class members until May 20 to request exclusion from the class or object to the settlement. Filing 48-1 at 2-3. Notices were also sent as required by 28 U.S.C. § 1715. Filing 42. No objections to the settlement agreement were received by the claims administrator or the Court. *See* filing 48-1 at 2. On June 4, the present motion to approve the class settlement was filed, along with a brief and index of evidence in support. Filing 46, filing 47; filing 48. The scheduled fairness hearing was held on June 20, at which no objecting class members or other objectors appeared. Filing 49.

For purposes of the discussion below, when terms are used that are expressly defined in the settlement agreement, they are intended to have the same meaning as in the settlement agreement.

SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Fed. R. Civ. P. 23(e). Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (9th Cir. 2005); *In re*

*BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2004); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The Court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017); *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015). If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate. Rule 23(e)(2). But a class action settlement is a private contract negotiated between the parties. *Marshall*, 787 F.3d at 509; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. And a settlement agreement is presumptively valid. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

In this case, the Court finds that the appointed class representatives and their counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representatives and the settling defendants were represented by able and experienced counsel. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representatives, settling defendants, and their respective counsel.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members was adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B). By virtue of the fact that an action maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. *Grunin,* 513 F.2d at 120. The notice given must be reasonably

calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Id.* In addition, the notice must reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance. *Id.* The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. *Id.* at 122.

The notice given in this case met those requirements; it informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement (including attorney fees and expenses), and afforded the class members a reasonable opportunity to object. As established in the Court's preliminary order approving notice, notices were sent directly to class members using the best available contact information. In short, the notice satisfied the requirements of Rule 23 and due process.

The Court also finds that the settlement agreement is fair, reasonable, adequate, and in the best interests of class members. In determining whether a settlement agreement is fair, the Court should consider (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Target Corp. Customer Data Sec. Breach Litig.,* 892 F.3d 968, 978 (8th Cir. 2018); *Keil,* 862 F.3d at 693; *Marshall,* 787 F.3d at 508; *Uponor,* 716 F.3d at 1063. The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *See Target,* 892 F.3d at 978; *Keil,* 862 F.3d at 695; *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski,* 678 F.3d 640, 648 (8th Cir. 2012). If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually

any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995).

But the Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin*, 513 F.2d at 123. In examining a proposed settlement for approval or disapproval, the Court does not try the case; the very purpose of a compromise is to avoid the delay and expense of a trial. *Id.* at 124; *see also DeBoer*, 64 F.3d at 1178. So, the Court need not make a detailed investigation consonant with trying the case; it must, however, provide an appellate court with a basis for determining that its decision rests on well-reasoned conclusions, and is not mere boilerplate. *Keil*, 862 F.3d at 693; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932-33. The views of the parties to the settlement must also be considered; the fact that only a handful of (or *no*) members object to the settlement weighs in its favor. *DeBoer*, 64 F.3d at 1178.

The defendants were sued under the federal Fair Debt Collection Practices Act (FDCPA) and the Nebraska Consumer Protection Act (NCPA) for sending an allegedly misleading debt collection letter. *See* filing 29. The defendants have agreed to provide a fund of $25,000 for the settlement class, consisting of $600 for the FDCPA claim and $24,400 for the NCPA claim, to be divided equally among class members who do not request exclusion. Filing 40-1 at 13. Approximately 110 class members will receive funds ranging in amounts from $221.81 to $235.76 each. Filing 48-4. Any unclaimed funds will be distributed *cy pres* to Nebraska Legal Aid. Filing 40-1 at 13.

To begin with, under the FDCPA, the recovery to class members is limited to the lesser of $500,000 or 1 percent of the net worth of the debt

collector. 15 U.S.C. § 1692k(a)(2)(B). The parties represent that information about the defendants' net worth was provided during discovery, and that "informed settlement negotiations" concerning the size of the settlement fund. And under the FDCPA, an individual plaintiff can recover actual damages plus statutory damages "as the court may allow, but not exceeding $1,000." § 1692k(a)(2)(A). So, the question is, how many members of the settlement class could have proven actual damages and persuaded the Court to award statutory damages in an amount greater than $221.81 to $235.76, and if so, would the amount be sufficiently greater to justify the burdens and hazards of individually litigating their claims? The Court is not persuaded that many (if any) members of the settlement class would have done substantially better as individual plaintiffs. In addition, the statute of limitations under the FDCPA is one year. § 1692(e). Many of the plaintiffs faced a serious statute of limitations obstacle to federal recovery.

The NCPA also allows statutory damages—of up to $1,000 for each class member, with no cap on total recovery. *See Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 572 n.4 (8th Cir. 2015). And it has a 4-year statute of limitations. Neb. Rev. Stat. § 59-1609. But the same question is posed: what would the individual plaintiffs' chances have been of persuading the Court to award more than $221.81 to $235.76, and if so, would that amount be sufficiently greater to justify the burdens and hazards of individually litigating their claims? There is, again, a strong argument that the risks of litigation would outweigh any potentially larger award.

It's also worth noting that the defendants have agreed to cease the allegedly deceptive practice underlying the lawsuit, which is a positive result of the litigation beyond the pecuniary recovery. And, of course, there are no objections to the settlement.

Based on the foregoing, the Court finds that the settlement agreement is fair, reasonable, and adequate within the meaning of Rule 23(e)(2), and will approve it. The Court will grant the Joint Motion for Final Approval of Class Settlement (filing 46).

### ATTORNEY FEES AND EXPENSES

In a certified class action, the Court may award reasonable attorney's fees and non-taxable costs that are authorized by the parties' agreement. Rule 23(h). Settlement class counsel has moved for an award of fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2). Filing 43. The following are the findings of fact and conclusions of law required of the Court by Rule 23(h)(3) and Fed. R. Civ. P. 52(a).

The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with counsel to establish a factual basis to support the award. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996). Courts utilize two main approaches to analyzing a request for attorney fees. *Id.* at 244. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Id.* Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45. The percentage-of-the-benefit method is recommended in common-fund cases. *Id.* But the Court has the discretion to use either method. *Target,* 892 F.3d at 976-77; *see Keil,* 862 F.3d at 701; *In re U.S. Bancorp. Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *Johnston,* 83 F.3d at 245.

The standards to be considered in calculating attorneys' fees under a "lodestar" approach include (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin*, 513 F.2d at 127. But the starting point is multiplying attorneys' hours and typical hourly rates; only after such a calculation do other, less objective factors come into the equation. *Grunin*, 513 F.2d at 127.

The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad*, 643 F.2d at 1313. Generally, attorneys have been required to substantiate their fee claims by providing detailed records relating to standard hourly rates for themselves or their firm and a complete breakdown of who spent what time in what endeavors. *Id.*; *see also Grunin*, 513 F.2d at 127. Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good. The increase or decrease reflects exceptional services only; it may be considered in the nature of a bonus or penalty. *Jorstad*, 643 F.2d at 1314. The heavy burden of proving entitlement to such an adjustment is on the moving party. *Id.* The Court may also consider whether one of the benefits to the plaintiff class is that counsel's fees are not to be subtracted from the class recovery. *Id.* at 1315-16.

Under *either* the lodestar or percentage-of-the-benefit method, the Court may determine the reasonableness of the fee award by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*,

488 F.2d 714, 719-20 (5th Cir. 1974). *Target*, 892 F.3d at 977; *Keil*, 862 F.3d at 701. Those factors are:

1. The time and labor required,
2. The novelty and difficulty of the questions,
3. The skill requisite to perform the legal service properly,
4. The preclusion of other employment by the attorney due to acceptance of the case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations imposed by the client or the circumstances,
8. The amount involved and the results obtained,
9. The experience, reputation, and ability of the attorneys,
10. The "undesirability" of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

Here, the settlement provides for attorney's fees and costs in the amount of $28,500. Filing 40-1 at 14. Counsel represents that as "a discount of $1,733.96 counsels' fees." Filing 44 at 2. Plainly, as a "percentage of the benefit," an award of attorney fees in an amount *greater* than the settlement fund itself might be problematic. But in consumer protection cases of this kind, where the recoveries may be nominal but fee awards are statutory, it's not uncommon for the attorney's fees even in individually litigated cases to exceed—perhaps substantially exceed—the actual award to the plaintiff.

Not surprisingly, the plaintiffs' counsel rely on a lodestar approach, and have presented evidence to that effect, billing 22 hours for O. Randolph Bragg

at a rate of $425 per hour, 12.3 hours for Pamela Car at $375 per hour, and William Reinbrecht for 45.2 hours at $350 per hour. Filing 45-2; filing 45-4; filing 45-6. That totals to $29,782.50 even before compensable costs are considered. Having reviewed the plaintiffs' evidence, the Court finds that the hours expended and the hourly rates of counsel are fair and reasonable, and will approve them.

Beyond that, many of the *Johnson* factors are encompassed in the lodestar analysis. Others are not particularly pertinent. But the remaining relevant factors—such as whether a fee is fixed or contingent, and the desirability of the litigation—weigh in favor of the award, given the risks associated with consumer rights litigation. And the fact that the settlement not only provides for monetary recovery, but also constrains deceptive debt collection practices, also counsels in favor of the award. *See id.* at 718.

The Court is aware that the separate negotiation of attorney fees, and the settling defendants' agreement not to contest fees up to a point, may present an opportunity for abuse. *See Johnston,* 83 F.3d at 246 n.11. But the Court finds no basis to suspect any type of abuse or collusion here. The Court also notes that the potential award of fees and expenses was disclosed in the notices to class members, including the amount, and no objections were received. *See In re U.S. Bancorp. Litig.,* 291 F.3d at 1038. Accordingly, the Court will grant the plaintiffs' requested attorney's fees.

### INCENTIVE AWARD

The defendants have agreed to pay compensation to the class representatives of $9,000 ($4,500 each, paid by the defendants over and above the class action settlement fund). Filing 40-1 at 14. That's based on awarding $1,000 each for each of their claims—that is, $1,000 for the FDCPA claim and

another $1,000 for the NCPA claim—and an incentive award of $2,500 each. Filing 40-1 at 14.

It is within the Court's discretion to award incentive awards to plaintiffs who serve as class representatives, considering the actions plaintiff took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing the litigation. *In re U.S. Bancorp. Litig.*, 291 F.3d 1035. There have been no objections to the incentive awards proposed here, and the Court finds that they are fair, reasonable, and properly based in the benefits to the class members generated by the litigation. The Court will award the requested incentives.

IT IS ORDERED:

1. The parties' Joint Motion for Final Approval of Class Settlement (filing 46) is granted.

2. The plaintiffs' Unopposed Motion for Approval of Plaintiffs' Incentive Awards & Damages and Plaintiffs' Attorneys' Fees and Costs (filing 43) is granted.

3. The certification of the settlement class, under Rules 23(b)(3) and 23(e), solely for settlement purposes, is confirmed:

    > All persons with addresses in Nebraska to whom the defendants sent, or caused to be sent, a letter in the form of Filing 29-1 or Filing 29-2 in an attempt to collect an alleged obligation which, as shown by the

> nature of the alleged obligation, the defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes.

The FDCPA class extends from March 23, 2017 through March 23, 2018. The NCPA class extends from March 23, 2014 through March 23, 2018.

4. The settlement agreement is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.

5. The settlement classes are awarded $25,000 ($600.00 to the FDCPA class and $24,400.00 to the NCPA class) as statutory damages to be distributed on a *pro rata* basis among the class members. Any undistributed amounts are awarded as a *cy pres* remedy to Legal Aid of Nebraska, for use in consumer representation and/or consumer education. The defendants agree that they will no longer send letters in the form of filing 29-1 or filing 29-2, containing a "Voluntary Appearance" form, to Nebraska residents.

6. Filing 48-4 shows proper distribution of the settlement funds to the class members. Checks shall be made payable to the class member, unless the Class Administrator has received an indication that the class member is deceased, in which case the settlement check may be made payable to the estate.

7. Pursuant to Rule 23, the Court finally certifies Timothy J. Shanahan, Jr. and Molli M. Larsen as the class representatives and William L. Reinbrecht and Pamela A. Car of the law firm Car & Reinbrecht, and O. Randolph Bragg of the law firm Horwitz, Horwitz & Associates, Ltd., as Class Counsel.

8. Timothy J. Shanahan, Jr. and Molli M. Larsen are each awarded $4,500 as statutory damages and as an incentive award for their services as class representatives.

9. This Memorandum and Order is binding on all class members, as no class members validly and timely excluded themselves from the settlement classes.

10. The class representatives, class members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the settlement agreement. The Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order. But nothing in this Memorandum and Order or the settlement agreement prevents a class member from defending a county court collection action brought against them by the defendants.

11. The plaintiffs' counsel are awarded the amount of $28,500 as reasonable costs and attorney's fees.

12. This Memorandum and Order is not, and shall not be construed, as an admission by the defendants of any liability or wrongdoing in this or any other proceeding.

13. This case is dismissed with prejudice.

14. A separate judgment will be entered.

Dated this 25th day of June, 2019.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Chief United States District Judge